**LUDLAM v. MILLER**

[225 N.C. App. 350 (2013)]

———

WARREN McGEE LUDLAM, Plaintiff-Appellee
v.
LESLIE KNOX MILLER, Defendant-Appellant

No. COA12-637

Filed 5 February 2013

**1. Child Custody and Support—imputation of income—insufficient findings of fact**

The trial court failed to make sufficient findings of fact in a child support modification case to support its conclusion to impute minimum wage to both unemployed parties. The matter was remanded for further findings of fact to support its conclusions of law and rulings.

**2. Child Custody and Support—child support calculation—inheritance not factored in**

The trial court did not abuse its discretion in a child support modification case by deciding not to factor plaintiff's inheritance into its child support calculations.

**3. Child Custody and Support—child support modification—self-support reserve category**

The trial court did not err in a child support modification case by finding that the matter fell into the self-support reserve category for child support.

**4. Child Custody and Support—cost of insurance—provided through stepparent—insufficient findings of fact**

The trial court erred in a child support modification case by assigning the cost of health and dental insurance to defendant

without making specific findings of fact regarding the availability of reasonably priced health and dental insurance. Insurance provided through defendant's husband could be considered as reasonably priced insurance coverage available to defendant. The matter was remanded for further findings of fact.

**5. Child Custody and Support—child support modification—cost of insurance—self-support reserve category**

The trial court did not err in a child support modification case by ordering defendant to pay all of the health and dental insurance premiums for the children where the trial court did not err in determining that plaintiff fell within the self-support reserve category.

**6. Child Custody and Support—child support modification—documentation of insurance—insufficient findings of fact**

The trial court's order in a child support modification case was remanded for further findings of fact concerning what documentation was required for plaintiff to have access to the health and dental insurance provided by defendant for the children's benefit.

**7. Child Custody and Support—child support modification—cost of private school—not obligated**

The trial court did not err in a child support modification case by determining that plaintiff was not obligated to contribute to the costs of sending the children to private school as this determination was within the trial court's discretion.

**8. Child Custody and Support—child support modification—child support worksheet—not attached to order—no prejudice**

The trial court did not commit prejudicial error in a child support modification case by failing to attach to the order a child support worksheet referenced in the order. Defendant included the relevant worksheet in the record and the Court's review of the order was not prejudiced.

**9. Child Custody and Support—child support agreement—termination**

The trial court did not err in a child support modification case by determining that the 7 June 2006 agreement had expired by its own terms and no longer contained any enforceable provisions. The execution of the 21 January 2010 agreement served to

terminate the 7 June 2006 agreement. Further, defendant did not indicate how she was prejudiced by the alleged retroactive termination of the child support agreement.

**10. Child Custody and Support—child support modification— breach of support agreement—insufficient findings of fact**

The trial court erred in a child support modification case by failing to include any findings of fact and conclusions of law concerning alleged breaches of a 7 June 2006 child support agreement prior to 21 January 2010. The matter was remanded.

**11. Child Custody and Support—child support modification— distribution of inheritance—insufficient findings of fact**

The trial court's order in a child support modification case was remanded for further findings of fact concerning the distribution of certain items of plaintiff's inheritance.

**12. Child Custody and Support—child support modification— sanctions—attorney fees—no abuse of discretion**

The trial court did not abuse its discretion in a child support modification case by failing to order sanctions against plaintiff, and by failing to award attorney's fees to defendant. The trial court gave the issues of attorney's fees and sanctions appropriate consideration, as reflected in its findings.

Appeal by Defendant from order entered 31 October 2011 by Judge Susan E. Bray in District Court, Guilford County. Heard in the Court of Appeals 11 December 2012.

*Jonathan McGirt; and Sandlin & Davidian, PA, by Deborah Sandlin, for Plaintiff-Appellee.*

*Woodruff Law Firm, PA, by Carolyn J. Woodruff and Jessica S. Bullock, for Defendant-Appellant.*

McGEE, Judge.

Warren McGee Ludlam (Plaintiff) and Leslie Knox Miller (Defendant) were married in 1992, and separated on 12 June 2006. There were two children (the children) born of this marriage, both still minors at the time of this appeal. Plaintiff and Defendant entered into a Consent Child Support and Parenting Agreement on 7 June 2006 (the 7 June 2006 agreement). According to the 7 June 2006 agreement, Plaintiff agreed to "transfer a minimum of fifteen (15) percent

of any inheritance or trust distribution that he receives by reason of the deaths of [Plaintiff's relatives] Helen Ludlam and Martha Ludlam to be held in trust for the benefit of [the children]." The 7 June 2006 agreement further stated that Plaintiff "shall set up a trust account for the children no later than December 31, 2006, and the children's portion of any distribution . . . will be deposited into the children's trust accounts within ten (10) days of [Plaintiff's] receipt." Plaintiff did not set up a trust account for the children by 31 December 2006. Plaintiff apparently set up a single trust account for the children in 2007, but this trust account was never funded.

Helen Ludlam, Plaintiff's mother, died 20 December 2008. According to Defendant, Plaintiff "inherited $368,487.26" from his mother's estate. Defendant does not indicate whether that $368,487.26 consisted of only cash, or whether it also included furniture, jewelry, and "oil and gas trusts" that Defendant claims Plaintiff inherited. A partial cash distribution of $325,953.94 from Helen Ludlam's estate was distributed to Plaintiff by attorneys for the executors of Helen Ludlam's estate. Plaintiff had set up individual trust accounts for the children on or about 23 December 2009. From the partial cash distribution of $325,953.94, Plaintiff received $277,060.84, and fifteen percent of it   or $48,893.10   was deposited into the children's trust accounts by 5 January 2010, as required by the 7 June 2006 agreement. Plaintiff also inherited personal property, including jewelry and furniture, from his mother. According to a 23 December 2009 letter sent to the children's trustee, Plaintiff set aside fifteen percent of the personal property inheritance for the children. There appears to be a dispute concerning whether this personal property was transferred to the children. An email from Plaintiff to Barbara Shyloski (Shyloski) at UBS Bank (UBS), dated 30 October 2009, indicates that Plaintiff received a total cash inheritance of $368,487.26, and that he intended to deposit $27,636.55 into each child's account. This amount represents a total of $55,273.09 to the children, and is fifteen percent of $368,487.26. Shyloski was Plaintiff's financial advisor. She was also a friend of both Plaintiff and Defendant. Shyloski testified that she advised Plaintiff to establish the children's 2009 separate trust accounts, believing that was preferable to utilizing a single trust account for both children. Shyloski set up the children's 2009 trust accounts at UBS. The trial court's findings of fact do not state what Plaintiff inherited from his mother, or how much of this inheritance was transferred into the children's trust accounts.

Additionally, in the 7 June 2006 agreement, Plaintiff and Defendant agreed that Plaintiff would pay $1,000.00 in monthly child support, and that Plaintiff and Defendant would evenly split the costs of health care, private schooling, and other expenses. The 7 June 2006 agreement stated it would remain in effect until: "(1) a custody order is entered by a court of competent jurisdiction or (2) the parties enter another child support, custody or parenting agreement executed in writing with the same formality as this Agreement." Plaintiff and Defendant entered into a Custody Consent Agreement on 21 January 2010 (the 21 January 2010 agreement), giving primary physical custody of the children to Defendant and secondary physical custody to Plaintiff.

Plaintiff and Defendant were divorced sometime after entry of the 7 June 2006 agreement. Defendant later married David Miller, a major in the armed forces (Major Miller). Plaintiff lost his job in 2008, and he has been unable to find employment since that time. Defendant has also been unemployed since 2008. The trial court found that both Plaintiff and Defendant had "searched for employment but have not been able to secure employment."

We must note that throughout Defendant's brief, her appellate attorneys consistently refer to Plaintiff as "a chronically unemployed MBA," and we find this language argumentative, and in violation of Rule 28(b)(5) of our Rules of Appellate Procedure. We note that Defendant, at the time of appeal, had been unemployed at least as long as Plaintiff, and had, according to testimony, been earning more than Plaintiff at the end of their marriage. In addition, Defendant also has an MBA, is a Certified Financial Advisor, and has passed the test to become a Certified Financial Planner.

Plaintiff filed this action on 2 February 2010, asking the trial court to "enter a child support order based upon the North Carolina Child Support Guidelines." Defendant answered on 12 April 2010, and filed counterclaims for breach of contract, child support, and attorney's fees. This matter was heard during the 11 April 2011 and subsequent Civil Sessions of District Court for Guilford County.

Defendant filed a motion for sanctions and criminal contempt against Plaintiff on 20 June 2011. In that motion, Defendant alleged that Plaintiff had made false representations both in his deposition and at the hearing, and had failed to fully comply with discovery. An order was entered on 31 October 2011 (the order) in which the trial court ruled that: (1) the 21 January 2010 agreement served to termi-

nate the 7 June 2006 agreement; (2) Plaintiff was to pay monthly child support in the amount of $156.00; (3) Defendant was to maintain health and dental insurance for the children, including paying the premiums, but Plaintiff and Defendant would equally share all uncovered or un-reimbursed medical and dental costs; (4) Defendant would provide Plaintiff with all necessary health and dental insurance coverage documentation; (5) Plaintiff owed no retroactive child support, and no amount was owed by either party for any expenses previously incurred on behalf of the children; (6) neither Plaintiff nor Defendant was entitled to attorney's fees or costs; and (7) Defendant's motion for sanctions and contempt was denied. Defendant appeals.

I.

Defendant raises on appeal thirteen issues related to the order. We affirm in part and reverse and remand in part.

II.

This Court has stated the standard of review applicable to child support orders as follows:

> In reviewing child support orders, our review is limited to a determination whether the trial court abused its discretion. Under this standard of review, the trial court's ruling will be overturned only upon a showing that it was so arbitrary that it could not have been the result of a reasoned decision. The trial court must, however, make sufficient findings of fact and conclusions of law to allow the reviewing court to determine whether a judgment, and the legal conclusions that underlie it, represent a correct application of the law.

*Spicer v. Spicer*, 168 N.C. App. 283, 287, 607 S.E.2d 678, 682 (2005) (citations omitted).

> Child support is to be set in such amount "as to meet the reasonable needs of the child for health, education, and maintenance, having due regard to the estates, earnings, conditions, accustomed standard of living of the child and the parties, the child care and the homemaker contributions of each party, and other facts of the particular case." N.C. Gen. Stat. § 50–13.4(c) (2009). Trial courts have great discretion in establishing the amount of support to be provided minor children. The amount

of child support awarded will therefore not be disturbed upon appeal absent a showing of abuse of discretion. Furthermore, an amount of child support which falls within the "guidelines is presumptively correct." "The 'ultimate objective in setting awards for child support is to secure support commensurate with the needs of the children and the ability of the [obligor] to meet the needs.' "

*Robinson v. Robinson,* \_\_\_ N.C. App. \_\_\_, \_\_\_, 707 S.E.2d 785, 795 (2011) (citations omitted).

"When determining a child support award, a trial judge has a high level of discretion, not only in setting the amount of the award, but also in establishing an appropriate remedy." "Child support orders entered by a trial court are accorded substantial deference by appellate courts and our review is limited to a determination of whether there was a clear abuse of discretion."

[A]bsent a clear abuse of discretion, a judge's determination of what is a proper amount of child support will not be disturbed on appeal. . . . A judge is subject to reversal for abuse of discretion only upon a showing by the litigant that the challenged actions are manifestly unsupported by reason.

*Moore v. Onafowora,* 208 N.C. App. 674, 676-77, 703 S.E.2d 744, 746-47 (2010) (citations omitted).

III.

**[1]** In Defendant's first argument, she contends the trial court erred by imputing minimum wage to her and Plaintiff when it found that neither Plaintiff nor Defendant acted in bad faith or suppressed his or her respective income to avoid or lessen child support obligations. We hold that the trial court's findings of fact are insufficient to support its conclusions of law on this issue, and we remand for further action.

The trial court determines the amount of child support based upon guidelines created pursuant to N.C. Gen. Stat. § 50-13.4(c)-(c1) (2011). The North Carolina Child Support Guidelines in effect on 1 January 2011 (the guidelines) state in relevant part:

**Assumptions And Expenses Included In Schedule Of Basic Child Support Obligations**

. . . .

**(3) Potential or Imputed Income**. If the court finds that a parent's voluntary unemployment or underemployment is the result of the parent's bad faith or deliberate suppression of income to avoid or minimize his or her child support obligation, child support may be calculated based on the parent's potential, rather than actual, income. . . . .

The amount of potential income imputed to a parent must be based on the parent's employment potential and probable earnings level based on the parent's recent work history, occupational qualifications and prevailing job opportunities and earning levels in the community. If the parent has no recent work history or vocational training, potential income should not be less than the minimum hourly wage for a 40-hour work week.

N.C. Child Support Guidelines, 2012 Ann. R. N.C. 50-51. For the purposes of this appeal, because the guidelines do not have clearly delineated sections, we shall refer to the above section of the guidelines as "section three." Concerning section three, this Court has held:

"[B]efore the earnings capacity rule is imposed, it must be shown that [the party's] actions which reduced his income were not taken in good faith." Thus, where the trial court finds that the decrease in a party's income is substantial and involuntary, without a showing of deliberate depression of income or other bad faith, the trial court is without power to impute income, and must determine the party's child support obligation based on the party's actual income.

*Ellis v. Ellis*, 126 N.C. App. 362, 364-65, 485 S.E.2d 82, 83 (1997) (citations omitted).

In finding of fact (12), the trial court stated:

Both Parties have searched for employment but have not been able to secure employment. The Court does not find that either party has acted in bad faith in having been voluntarily unemployed or that either party has

[deliberately] suppressed his or her income to avoid a support obligation to the extent that the Court should impute income to each party at a prior income level; however, the Court finds it appropriate to impute income to each party at the minimum wage of $7.25 per hour (at 40 hours per week and 50 weeks per year, given holidays), for an imputed income to each party of $1,208.00 per month for the purposes of calculating child support.

The trial court found that both Plaintiff and Defendant had searched for employment, but both had been unsuccessful. Less clear from the order is whether the trial court found that Plaintiff and Defendant had acted in bad faith. Our general impression is that the trial court found no bad faith. However, a literal reading of this finding of fact suggests that the trial court found bad faith which was insufficient to impute income at a prior income level, but that it found bad faith that was sufficient to impute income at the minimum wage. Neither of the above interpretations of the trial court's order would support imputation of income at minimum wage.

The trial court must find a "deliberate depression of income or other bad faith" in order to impute income. *Ellis*, 126 N.C. App. at 364-65, 485 S.E.2d at 83. Further, the guidelines do not authorize choosing a method of imputing income based upon the *degree* of bad faith found by the trial court. Therefore, to the extent, if any, that the trial court imputed income at minimum wage because it found a low degree of bad faith, but would have imputed income based on prior earnings had it found a higher degree of bad faith, this was error. Pursuant to section three, the trial court is to first determine whether "deliberate depression of income or other bad faith" exists. If the trial court finds either in the affirmative, it may then determine the method of imputing income:

> The amount of potential income imputed to a parent must be based on the parent's employment potential and probable earnings level based on the parent's recent work history, occupational qualifications and prevailing job opportunities and earning levels in the community. If the parent has no recent work history or vocational training, potential income should not be less than the minimum hourly wage for a 40-hour work week.

**LUDLAM v. MILLER**

[225 N.C. App. 350 (2013)]

N.C. Child Support Guidelines, 2012 Ann. R. N.C. 51. We are aware that the guidelines permit deviation from the guidelines in certain circumstances. *Beamer v. Beamer*, 169 N.C. App. 594, 597, 610 S.E.2d 220, 223 (2005). The order, however, does not contain the findings of fact or conclusions of law required for deviation from the guidelines, *id.*, so there is no indication the trial court was intending any deviation in this instance.

We reverse this portion of the order and remand to the trial court. If the trial court concludes there has been deliberate depression of income or other bad faith, it may then impute income in accordance with section three. If the trial court concludes there was no deliberate depression of income or other bad faith, it may not impute income based upon section three. This is not to say that the trial court may not deviate from the guidelines under the appropriate circumstances. *Beamer*, 169 N.C. App. at 596-97, 610 S.E.2d at 222-23. The trial court shall make all necessary findings of fact to support its conclusions of law and rulings.

IV.

**[2]** In Defendant's second argument, she contends the trial court erred in failing to consider Plaintiff's "non-recurring income." We disagree.

Specifically, Defendant argues that Plaintiff received $368,487.26 through inheritance that should have been treated as non-recurring income and should have been factored into the trial court's child support calculations. Defendant cites the guidelines, which state:

> "Income" means a parent's actual gross income from any source, including but not limited to income from employment or self-employment (salaries, wages, commissions, bonuses, dividends, severance pay, etc.) . . . . When income is received on an irregular, non-recurring, or one-time basis, the court *may* average or pro-rate the income over a specified period of time or require an obligor to pay as child support a percentage of his or her non-recurring income that is equivalent to the percentage of his or her recurring income paid for child support.

N.C. Child Support Guidelines, 2012 Ann. R. N.C. 51 (emphasis added). Nothing in the guidelines suggests a trial court is required to include non-recurring income in its child support calculations, and Defendant cites to nothing indicating otherwise. In fact, the trial court is vested with great discretion in these matters:

The General Assembly has chosen to give the district courts broad discretion to devise an appropriate child support award in light of the circumstances of all the parties. It is the responsibility of the district court to weigh those circumstances and determine what is just and appropriate; we may not dictate a result as a matter of law.

*Spicer*, 168 N.C. App. at 290-91, 607 S.E.2d at 684.

There is evidence in the record that, in accordance with the terms of the 7 June 2006 agreement, Plaintiff transferred fifteen percent of the $368,487.26 inheritance, or $55,273.09, to two trust accounts established for the children. The trial court found as fact that, at the time of the hearing, Plaintiff had a net worth of $301,136.98 and Defendant had a net worth of $378,740.00-$77,603.02 more than Plaintiff. We hold the trial court did not abuse its discretion in deciding not to factor the remainder of Plaintiff's $368,487.26 inheritance into its child support calculations. *Id.*

V.

[3] In Defendant's third argument, she contends the trial court erred by finding that this matter "fell into the self-support reserve category for child support." We disagree.

"The Guidelines include a self-support reserve that ensures that obligors have sufficient income to maintain a minimum standard of living[.]" N.C. Child Support Guidelines, 2012 Ann. R. N.C. 50. Child support obligors who fall into the self-support reserve category have reduced obligations under the guidelines. *Id.*

Defendant's argument is wholly premised upon her previous argument that the trial court erred by failing to factor Plaintiff's $368,487.26 inheritance into its child support calculations. Because we have held that the trial court did not err in so doing, we necessarily hold that this argument is also without merit.

VI.

[4] In Defendant's fourth argument, she contends the trial court erred "by assigning the cost of health and dental insurance to [Defendant] . . . without first finding that she could procure insurance currently at a reasonable cost." We agree in part, and remand for additional findings of fact.

The trial court found as fact that "Defendant provides medical and dental insurance coverage to the . . . minor children at a cost of $60.00 per month." The trial court then ordered that "Defendant shall provide . . . and pay any insurance premiums for health and dental insurance coverage for the minor children[.]" Defendant argues the trial court erred in failing to make required findings of fact, and also erred in ordering that Defendant maintain the current health insurance coverage that was provided through Major Miller's employer. We agree that the trial court must make specific findings of fact regarding the availability of reasonably priced health and dental insurance. *Buncombe Cty. ex rel. Frady v. Rogers*, 148 N.C. App. 401, 403-04, 559 S.E.2d 227, 229 (2002). We find that the child support order does not include sufficient findings of fact in this regard, and remand to the trial court for further action.

Defendant's second contention, however, is without merit. The trial court ordered Defendant to continue providing health and dental insurance coverage, which the trial court found was costing Defendant sixty dollars per month. Defendant argues that this insurance is provided through Major Miller's employer and, thus, cannot be considered as reasonably priced insurance coverage available to Defendant. Assuming the health and dental insurance coverage currently maintained for the children is provided through Major Miller's employer, which will be made clear through additional findings of fact by the trial court, the guidelines clearly anticipate that insurance may be provided through a stepparent:

### Health Insurance and Health Care Costs

The amount that is, or will be, paid by a parent (or a parent's spouse) for health (medical, or medical and dental) insurance for the children for whom support is being determined is added to the basic child support obligation and prorated between the parents based on their respective incomes. Payments that are made by a parent's (or stepparent's) employer for health insurance and are not deducted from the parent's (or stepparent's) wages are not included.

N.C. Child Support Guidelines, 2012 Ann. R. N.C. 53. This part of Defendant's argument is without merit.

## VII.

**[5]** In Defendant's fifth argument, she contends the trial court erred by ordering her to pay all of the health and dental insurance premiums for the children. We disagree.

Defendant's entire argument is premised upon her previous argument that Plaintiff did not fall within the self-support reserve category. Because we have held above that the trial court did not err in determining that Plaintiff falls within the self-support reserve category, we further hold that Defendant's fifth argument fails.

## VIII.

**[6]** In Defendant's sixth argument, she contends the trial court erred in "ordering [her] to provide health and dental coverage and to immediately supply [Plaintiff] with copies of insurance and ID cards." We remand for further findings.

Defendant reargues her position that Major Miller cannot be required to provide health and dental insurance for Defendant's children. We have already stated that the guidelines contemplate that insurance for children may be provided by a stepparent, and we have remanded for additional findings regarding the coverage currently provided to the children. We note that the trial court ordered Defendant, not Major Miller, to continue providing insurance. Though Defendant may have procured that insurance through Major Miller, it is Defendant, not Major Miller, who is legally responsible for paying the premiums. If the trial court makes the appropriate findings of fact, there is no inherent error in having Defendant pay for insurance premiums for coverage provided through her husband's employer.

Defendant claims the insurance that is currently provided for the children is provided through Major Miller's military insurance, and that ordering Major Miller to turn over documentation to Plaintiff to use for the children would violate 18 U.S.C.S. § 701 (1994). Because the record does not indicate what documentation is required for Plaintiff to have access to the health and dental insurance provided by Defendant for the children's benefit, we remand for findings of fact to resolve this issue. We are confident proper insurance cards or other documentation   that will not violate federal law   are available for Plaintiff to use for the benefit of the children.

Defendant also seems to argue that Major Miller, because of his dislike for Plaintiff, will terminate insurance coverage for the chil-

dren and force Defendant to obtain other, more expensive insurance. Defendant argues that, because the trial court has no authority to order Major Miller to allow Defendant to use Major Miller's insurance for the children, the trial court has failed to show that Defendant may obtain and maintain insurance for the children at a reasonable cost. Because the findings of fact are insufficient even to establish that the insurance has been provided through Major Miller, we remand for appropriate findings. Assuming, *arguendo*, that Defendant's argument is correct, and that Major Miller will deprive Defendant of what appears to be a most affordable health and dental insurance for the children, Defendant may, at that time, argue a change of circumstances to the trial court and seek appropriate relief. N.C. Gen. Stat. § 50-13.7(a) (2011). Unless and until that happens, however, the trial court commits no error in ordering Defendant to continue paying premiums for the insurance currently benefitting the children.

We remand for additional findings of fact and conclusions of law, as needed, to address the above issues.

IX.

**[7]** In Defendant's seventh argument, she contends the trial court erred in determining that Plaintiff was not obligated to contribute to the costs of sending the children to private school. We disagree.

Pursuant to the guidelines, in a section titled **Other Extraordinary Expenses:**

> [E]xpenses related to special or private elementary or secondary schools to meet a child's particular educational needs . . . may be added to the basic child support obligation and ordered paid by the parents in proportion to their respective incomes if the court determines the expenses are reasonable, necessary, and in the child's best interest.

N.C. Child Support Guidelines, 2012 Ann. R. N.C. 53.

The trial court stated the following in its fifteenth finding of fact:

> The private school costs are not a factor in calculating child support, and the Court does not determine that the expenses for private school are reasonable, necessary and in the children's best interest. Nevertheless, the minor children have been enrolled in private school for years (at least since the execution of the [consent agree-

ment]), it was the parties' prior agreement for the minor children to attend private school and for each party to pay one-half of the private school expenses, the parties believe that it is good and beneficial for the minor children to attend private school and both parties want the minor children to attend private school, so the Court would . . . normally be inclined to deviate from the Child Support Guidelines if appropriate (after making proper findings of fact) and order Plaintiff to pay one-half of the private school costs for the minor children; however, Plaintiff does not have the income to pay part of the private school costs, and the Court is also inclined to award Plaintiff some of his attorney fees to be reimbursed to him by Defendant given the circumstances of this case. In weighing the evidence, the Court does not find that a deviation is warranted regarding private school expenses, and the Court is also considering this finding in not awarding Plaintiff any attorney fees to be reimbursed by Defendant.

We note that this finding of fact includes conclusions of law, and we treat them as such. Defendant correctly argues that the trial court seemed to erroneously believe it would need to deviate from the guidelines to order Plaintiff to pay part of the costs for private school:

"[D]etermination of what constitutes an extraordinary expense is . . . within the discretion of the trial court[.]" Based upon the Guideline language above, "the court may, in its discretion, make adjustments [in the Guideline amounts] for extraordinary expenses." However, incorporation of such adjustments into a child support award does *not* constitute deviation from the Guidelines, but rather is deemed a discretionary adjustment to the presumptive amounts set forth in the Guidelines. . . . . [A]bsent a party's request for deviation, the trial court is not required to set forth findings of fact related to the child's needs and the non-custodial parent's ability to pay extraordinary expenses.

*Biggs v. Greer*, 136 N.C. App. 294, 298, 524 S.E.2d 577, 581-82 (2000) (citations omitted). Though the trial court may have been mistaken concerning whether ordering Plaintiff to pay private school expenses would have been a deviation from the guidelines, or merely a discretionary determination, the intent and reasoning of the trial court is

clear, and we find no abuse of discretion in its ruling. Defendant's argument is without merit.

## X.

**[8]** In Defendant's eighth argument, she contends the trial court committed prejudicial error in failing to attach to the order a child support worksheet referenced in the order. We disagree.

Specifically, Defendant argues that this Court does not have the necessary record evidence "to assess the [t]rial [c]ourt's findings of fact and conclusions of law related to the proper level of support for each parent." We first note that Defendant does not include in her brief citation to any authority in support of her argument. N.C.R. App. P. 28(b)(6) ("The body of the argument and the statement of applicable standard(s) of review shall contain citations of the authorities upon which the appellant relies."). Further, Defendant includes the relevant worksheet in the record. Our review of the order is in no way prejudiced. This argument is without merit.

## XI.

**[9]** In Defendant's ninth and tenth arguments, she contends the trial court erred in determining that the 7 June 2006 agreement had expired by its own terms and no longer contained any enforceable provisions. We disagree.

Contract interpretation is a question of law, and our review is *de novo. Harris v. Ray Johnson Constr. Co.*, 139 N.C. App. 827, 829, 534 S.E.2d 653, 654 (2000) (citations omitted).

The trial court concluded that, once Plaintiff and Defendant entered into the 21 January 2010 agreement, the 7 June 2006 agreement terminated by its own terms. The 7 June 2006 agreement states: "This Agreement shall remain in full force and effect until: (1) a custody order is entered by a court of competent jurisdiction or (2) the parties enter another child support, custody or parenting agreement executed in writing with the same formality as this Agreement." The parties entered into and executed another custody agreement, in writing, on 21 January 2010. The intent of the parties in an agreement is determined by consulting the plain language of the agreement. *Brown v. Ginn*, 181 N.C. App. 563, 567, 640 S.E.2d 787, 789-90 (2007). When the language of the agreement is unambiguous, we will not consult extrinsic evidence. *Id.* We hold that the execution of the 21 January 2010 agreement served to terminate the 7 June 2006 agreement.

Further, the only specific prejudice argued by Defendant is as follows: "The result of the [t]rial [c]ourt's ruling was to terminate an agreement for Child Support retroactively, leaving a period of more than a year where the parties were not governed by an agreement or Order to provide child support." Defendant does not indicate how she was prejudiced by this alleged retroactive termination of the child support agreement. This argument is without merit.

## XII.

**[10]** In her eleventh argument, Defendant contends the trial court erred "in not considering breaches of the agreement occurring before the court-declared termination date." We remand for additional findings and conclusions as needed.

Defendant provides no citation in support of her argument that the trial court erred by failing to consider any breach of the 7 June 2006 agreement that may have occurred before that agreement terminated on 21 January 2010, which constitutes a violation of N.C.R. App. P. 28(b)(6), and subjects this argument to dismissal. Defendant does include one citation to support her argument that the trial court erred by failing to include any findings of fact and conclusions of law concerning alleged breaches of the 7 June 2006 agreement prior to 21 January 2010. Defendant argues that Plaintiff failed to fund the children's trusts in a timely manner, resulting in a loss of interest income to the children. Because we have no findings of fact or conclusions of law to review concerning this allegation, we remand to the trial court so that it may make the required findings and conclusions. We note, however, that any damages resulting from Plaintiff's failure to fund the children's trust funds within the time period prescribed by the 7 June 2006 agreement are likely to be minimal. The 7 June 2006 agreement stated:

> [Plaintiff] shall transfer a minimum of fifteen (15) percent of any inheritance or trust distribution that he receives by reason of the deaths of Helen Ludlam and Martha Ludlam to be held in trust for the benefit of the children[.] [Plaintiff] shall set up a trust account for the children no later than December 31, 2006, and the children's portion of any distribution . . . will be deposited into the children's trust accounts within ten (10) days of . . . receipt.

There is evidence to suggest that Helen Ludlam died 20 December 2008, and that her estate was settled by 8 December 2009. More pre-

cise dates will be found by the trial court on remand. There is evidence that most, if not all, of the fifteen percent of the $368,487.26 distribution was deposited into the children's trust accounts by 5 January 2010, apparently less than a month after Plaintiff received the funds, and around eighteen days past the time period mandated by the 7 June 2006 agreement. The trial court is the appropriate body to make findings of fact concerning the timing and amounts of the distributions to the children's trust accounts.

### XIII.

**[11]** In Defendant's twelfth argument, she contends the trial court erred in determining that Plaintiff did not owe her any damages for violation of the consent agreement.

Defendant's argument is premised upon her contention that the trial court failed to make the appropriate findings of fact to support its conclusion that Plaintiff did not owe Defendant any damages. We have already remanded for findings related to the alleged loss of interest income. Defendant further argues that Plaintiff inherited furniture, jewelry, and gas and oil trusts and, pursuant to the 7 June 2006 agreement, Plaintiff was required to deposit fifteen percent of those items in the children's trust accounts prior to 21 January 2010.

Defendant states in the facts section of her brief that "[t]here was no distribution of furniture and jewelry to the minor children's trusts." There is evidence in the record that Plaintiff set aside jewelry and furniture as part of the fifteen percent distribution to the children. However, there are no findings of fact regarding the furniture and jewelry, or the purported oil and gas leases. Because the trial court has not made findings or conclusions concerning the distribution of these items, we remand for the entry of such.

### XIV.

**[12]** In Defendant's thirteenth argument, she contends the trial court erred by failing to order sanctions against Plaintiff, and by failing to award attorney's fees to Defendant. We disagree.

> The decision to allow attorney's fees is in the discretion of the presiding judge, and is reversible by an appellate court only for abuse of discretion. "Abuse of discretion results where the court's ruling is manifestly unsupported by reason or is so arbitrary that it could not have been the result of a reasoned decision."

*Davis v. Kelly*, 147 N.C. App. 102, 106, 554 S.E.2d 402, 405 (2001) (citations omitted). "According to well-established North Carolina law, 'a broad discretion must be given to the trial judge with regard to sanctions.' " *Batlle v. Sabates*, 198 N.C. App. 407, 417, 681 S.E.2d 788, 795 (2009) (citations omitted).

Defendant again fails to cite to any authority that would support her argument that Plaintiff should have been sanctioned, or that she should have been awarded attorney's fees. N.C.R. App. P. 28(b)(6). Defendant does cite to authority in support of her argument that the trial court failed to enter appropriate findings and conclusions concerning sanctions and attorney's fees. However, our review of the order shows that the trial court gave the issues of attorney's fees and sanctions appropriate consideration, as reflected in its findings, and we find no abuse of discretion in either instance. *Batlle*, 198 N.C. App. at 417, 681 S.E.2d at 795; *Davis*, 147 N.C. App. at 106, 554 S.E.2d at 405. This argument is without merit.

Affirmed in part, reversed and remanded in part.

Judges HUNTER, Robert C. and ELMORE concur.